James H. Power
Marie E. Larsen
Katherine A. Skeele
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
marie.larsen@hklaw.com
katherine.skeele@hklaw.com

*Attorneys for Plaintiff*
*Colonial Navigation Co. Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COLONIAL NAVIGATION CO. INC., individually and on behalf of M/V PETALI LADY (IMO No. 9275402),

Plaintiff,

- against -

O.W. BUNKER & TRADING A/S, SEARIGHTS MARITIME SERVICES PTE LTD, and ING BANK N.V.

Defendants.

---

15 Civ. ______ (     )

**COMPLAINT FOR INTERPLEADER PURSUANT TO RULE 22**

Plaintiff Colonial Navigation Co. Inc. ("Colonial Navigation" or "Plaintiff"), by and through its attorneys Holland & Knight LLP, brings this action pursuant to Rule 9(h), as and for its Complaint for Interpleader pursuant to Fed. R. Civ. P. 22 and alleges, upon information and belief, as follows:

## THE PARTIES

1. Colonial Navigation is a corporation or business entity organized and existing pursuant to the laws of Delaware, with an office and place of business at 750 Lexington Avenue, 26th Floor, New York, New York 10026.

2. Defendant O.W. Bunker & Trading A/S ("O.W. Denmark") is a corporation or business entity organized and existing pursuant to the laws of Denmark, with an office and place of business at Stigsborgvej 60, DK-9400 Norresundby, Denmark.

3. Defendant Searights Maritime Services Pte Ltd ("Searights") is a corporation or business entity organized and existing pursuant to the laws of a foreign country, with its principal place of business at 80 Marine Parade Road, #16-05/06 Parkway Parade, Singapore 449269.

4. Defendant ING Bank N.V. ("ING") is a bank organized and existing pursuant to the laws of the Netherlands with an office and place of business located at Amsterdamse Poort, Bijlmerplein 888, 1102 MG Amsterdam, The Netherlands.

## JURISDICTION AND VENUE

5. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

6. This Court has personal jurisdiction over defendants O.W. Denmark pursuant to the terms of the applicable bunker supply contract and O.W. Group Standard Terms and Conditions which call for the Southern District of New York as the exclusive jurisdiction for claims arising from fuel sale and delivery.

7. This Court also has personal jurisdiction over defendant Searights pursuant to Searights' agreement with O.W. Denmark's Terms and Conditions for the Sale of Marine Fuels

which call for the Southern District of New York as the exclusive jurisdiction for maritime lien claims arising from fuel sale and delivery.

8. This Court has personal jurisdiction over ING to the extent it is or may be a third-party beneficiary of the bunker supply contracts at issue in this dispute and to the extent that it is an alleged assignee of the receivables of O.W. Denmark. ING has asserted that it stands in the shoes of O.W. Denmark and is therefore bound by the terms and conditions of O.W. Denmark. Additionally, ING transacts business within the jurisdiction of this Court and has a place of business at 1325 Avenue of the Americas, New York, New York 10019.

9. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391.

## NATURE OF ACTION

10. This is an action for Rule Interpleader pursuant to Fed. R. Civ. P. 22, with respect to the principal sum of $463,621.47, representing the amount demanded from multiple parties for the supply of bunkers to the vessel M/V Petali Lady (the "Vessel"). With respect to payment for such supply, O.W. Denmark, Searights, ING or some other third party have or may have conflicting claims as to ownership of the fuel payment funds to be paid by Colonial Navigation for the purchase of and receipt of a specific and finite quantity of bunkers (fuel) in Singapore by the Vessel (the "Fuel Delivery").

## FACTUAL BACKGROUND

11. At all relevant times to the Fuel Delivery, Colonial Navigation acted as agent for the vessel managers of the of M/V Petali Lady.

12. On or about October 17, 2014, Colonial Navigation ordered bunkers from O.W. Denmark for the Vessel. A true and correct copy of the Sales Order Confirmation is attached

hereto as Exhibit 1. On this document, the "Seller" is identified as O.W. Denmark, and notes that Seller's terms and conditions apply to the bunker stem.

13. The bunkers were delivered to the Vessel on or about October 21, 2014. A bunker delivery receipt was issued by Searights. A true copy of the bunker delivery receipt is attached hereto as Exhibit 2. The bunker delivery receipt does not include any terms and conditions and therefore the only relevant terms for determine rights between physical supplier Searights and the Vessel is O.W. Bunker's standard terms and conditions as agreed in the Sales Order Confirmation (Exhibit 1).

14. An invoice was issued to Colonial Navigation by O.W. Denmark on October 21, 2014 for the supply of bunkers to the Vessel. The invoice directs payment of $463,621.47 to O.W. Denmark, to an ING account. A true copy of the bunker invoice is attached hereto as Exhibit 3.

15. The standard terms and conditions of all OW Bunker entities for the sale of bunkers includes clause P.5: "Without prejudice to any other Clause herein any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them, any dispute and/or claim aris[ing] in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the Southern District of New York." A true copy of the OW Bunker terms is attached hereto as Exhibit 4.

16. On November 7, 2014, O.W. Bunker & Trading A/S and certain of its Danish subsidiaries and affiliates filed for bankruptcy in their home jurisdiction of Denmark. Thereafter many other O.W. entities and/or affiliates filed for bankruptcy in various other jurisdictions

around the world. No foreign O.W. bankruptcy proceeding has been recognized in the United States pursuant to Chapter 15 of the U.S. Bankruptcy Code.

17. Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker & Trading A/S and its subsidiaries, and ING as Security Agent, the O.W. entities have allegedly assigned certain rights in respect of their supply contracts as security to ING.

18. On November 12, 2014, before the payment of the invoice even came due, O.W. Denmark sent a reminder for payment to its ING account notwithstanding the bankruptcy proceedings in Denmark. A true and correct copy of the reminder for payment is attached hereto as Exhibit 5.

19. Also on November 12, 2014, in response to the bankruptcy of O.W. Bunker & Trading A/S, Searights sent an email to Colonial Navigation noting that it had acted as physical supplier for the supply of bunkers to the Vessel by O.W. Denmark, and inquiring whether payment directly to O.W. Denmark had already been made in light of the bankruptcy proceedings. A true and correct copy of the correspondence is attached hereto as Exhibit 6.

20. On September 30, 2015, Colonial Navigation received an email from PriceWaterhouseCoopersLLC ("PWC") as receivers and on behalf of ING, demanding payment of the invoice or posting of security for the Fuel Delivery pursuant to the Omnibus Security Agreement. ING demanded payment of $630,545.31, constituting the invoice amount plus over $166,000 of interest. In its demand, ING reserved the right to arrest the vessel. A true and correct copy of the demand for payment is attached hereto as Exhibit 7.

21. ING sent follow up emails on October 6, 2015 and October 13, 2015, demanding immediate payment of $634,206.54 (and later, $638,477.98) "to avoid legal actions to recover

the balances, including vessel arrests." True and correct copies of the October 6 and 13 demands for payment are attached hereto as Exhibit 8.

22. On October 19, 2015 ING sent Colonial Navigation a "FINAL WARNING BEFORE ARREST" demanding payment of the full invoice plus contractual interest, and indicating that the Vessel was being put on "arrest watch." ING further indicated to Claus Mortensen of O.W. Denmark, reading in copy, that papers for the arrest of the Vessel were being prepared and transmitted to him. A true and correct copy of ING's final warning before arrest is attached hereto as Exhibit 9.

23. As recently as November 5, 2015, Claus Mortensen on behalf of the receivers of O.W. Denmark and on behalf of ING as the Security Agent for O.W. Denmark sent a letter to Colonial Navigation advising it of certain O.W. Bunker English law decisions and reiterating the threat of arrest

**ARREST OF VESSEL AND NECESSITY OF INTERPLEADER**

24. Due to the bankruptcy filings of O.W. Denmark and other O.W. group entities, O.W. Denmark, Searights and ING have sought or are expected to seek to collect amounts allegedly owed to them arising from or related to the supply of bunkers to the Vessel.

25. Under United States maritime law, the contract supplier of necessaries, including fuel, to a vessel may obtain a maritime lien against that vessel. Additionally, under certain limited circumstances, a physical supplier (or transporter) of the fuel may also assert a maritime lien on that vessel.

26. Moreover, other parties, such as ING, have asserted a right to payment for the Fuel Delivery. Upon information and belief ING's claims are based on assignments of receivables by various O.W. entities including but not limited to O.W. Denmark.

27. The Vessel is currently due to arrive in Louisiana on or about November 25, 2015 and will face arrest by the defendants claiming to assert a maritime lien,[1] which would cause harm to Plaintiff, delay the Vessel, affect innocent third parties with interests in the Vessel's cargo and generally inhibit and interfere with maritime commerce. Indeed, ING has actively been arresting vessels in the U.S. gulf ports, has threatened to arrest the Vessel to assert its claims and indicates that the Vessel is on "arrest watch." *See* Exhibit 9. The date of arrival of the Vessel in advance of a Thanksgiving court holiday and weekend is a particular motivation for ING to arrest the Vessel upon its arrival.

28. Seaights has not been paid by O.W. Denmark, and its communications suggest that it may attempt to arrest the vessel pursuant to the lien clause contained in the applicable O.W. terms and conditions, or otherwise assert claims in a jurisdiction that is beneficial to Searights. Because Searights acted as the physical supplier for the Fuel Delivery governed by the O.W. Bunker terms and conditions, upon deposit of interpleader funds into the registry as a substitute res for the Vessel, Searights must assert all claims in relation to the Fuel Delivery in the Southern District of New York.

29. Colonial Navigation presently has control over the funds invoiced for the Fuel Delivery to the Vessel. Plaintiff disclaims any interest in the amount invoiced for the supply of bunkers to the Vessel.

30. Colonial Navigation cannot ascertain whether the amount owed for the Fuel Delivery should be paid to O.W. Denmark, Searights or ING or some other third party in order to extinguish all maritime liens and/or other claims against Colonial Navigation and the Vessel and

---

[1] Plaintiff makes no assertion nor take a position as to the validity of any of the potentially asserted maritime lien or other claims by any of the Defendants or whether O.W. Denmark has validly assigned any maritime lien or other claims to ING. These issues remain to be decided.

to prevent the Vessel's arrest or attachment in this District or elsewhere and to prevent double liability for the Fuel Delivery.

31. The competing claims of the Defendants or other third parties exposes Colonial Navigation and the Vessel to multiple liabilities in connection with the payment of the bunker invoices in order to extinguish competing maritime lien claims and/or other *in personam* or non-maritime claims.

32. Although a deposit of disputed property is not required under Fed. R. Civ. P. 22 "Rule Interpleader,"' Colonial Navigation, acting on behalf of the Vessel, is nonetheless willing to deposit with the Court the sum of at least $463,621.47, representing the amount due pursuant to the invoice issued by O.W. Denmark for the Fuel Delivery, as this Court may order, so that O.W. Denmark, Searights, ING and any other claimant may interplead among themselves to establish their respective rights to the funds.

33. Further, in order to comply with the requirements of Supplemental Admiralty Rule E(5)(a) and for the funds deposited into the registry to constitute security for the *in rem* claims of the claimants and to act as the substitute *res* against which claimants must assert their maritime liens for the Fuel Delivery, Plaintiff is prepared to deposit an additional amount ($27,817.29) constituting 6% interest per annum or such other amount as the court deems just and proper. Thus, the total amount of the proposed deposit is calculated to be $491,438.76, inclusive of one year of interest.

34. After depositing the sum of $491,438.76 with the Court, Colonial Navigation is entitled to be discharged from further *in personam* liability with respect to the funds and liability for payment for the Fuel Delivery. The Vessel is similarly entitled to be discharged from any

maritime lien against it arising from the Fuel Delivery as described herein and as reflected in Exhibits 1 - 3.

WHEREFORE, Plaintiff Colonial Navigation Co. Inc., individually and on behalf of the vessel M/V Petali Lady, respectfully requests that this Court:

(i) determine which of the defendants is entitled to the Fuel Delivery funds, or, in the alternative, the share of each defendant, if any;

(ii) enjoin O.W. Bunker & Trading A/S, Searights Maritime Services Pte Ltd, ING Bank, N.V. and any later-identified claimants from commencing any action against Colonial Navigation *in personam* or the vessel M/V Petali Lady *in rem*, including but not limited to the arrest or attachment of the Vessel in any port, pursuant to Supplemental Admiralty Rules C or B or other law, based on the assertion of any *in rem* claim or *in personam* claim directed against Colonial Navigation for the provision of the bunkers referred to herein as the Fuel Delivery;

(iii) discharge Colonial Navigation from any liability on any claim that has been made or may in the future for the Fuel Delivery upon Plaintiff's deposit of $491,438.76 into this Court's registry, or such other amount the Court finds sufficient to discharge Colonial Navigation and the Vessel from liability for the Fuel Delivery;

(iv) discharge the Vessel from any liability on any claim that has been made or may in the future be made for the Fuel Delivery upon Plaintiff's deposit of $491,438.76 into this Court's registry;

(v) award Plaintiff its costs and attorneys' fees in bringing this action and in maintaining this action; and

(vi) award the return of any amount remaining in the registry (e.g., the interest deposit) to the Plaintiff upon the ultimate disposition of claims to the deposited Fuel Delivery funds; and

(vii) award Plaintiff such other and further relief including equitable relief available under admiralty which this Court may deem just and proper.

Dated: New York, New York
November 23, 2015

HOLLAND & KNIGHT LLP

By: /s/ James H. Power

James H. Power
Marie E. Larsen
Katherine A. Skeele
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
marie.larsen@hklaw.com
katherine.skeele@hklaw.com

*Attorneys for Plaintiff Colonial Navigation Co. Inc., individually and on behalf of M/V Petali Lady (IMO No. 9275402)*